NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SARA CORCORAN,**
*Petitioner*

**v.**

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent*

---

2024-2349

---

Petition for review of the Merit Systems Protection Board in No. DC-0843-22-0380-I-1.

---

Decided:  July 8, 2026

---

LAINA LOPEZ, Berliner, Corcoran & Rowe, LLP, Washington, DC, argued for petitioner.

STEPHANIE FLEMING, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent.  Also represented by REGINALD THOMAS BLADES, JR., BRIAN M. BOYNTON, PATRICIA M. MCCARTHY.

---

Before REYNA, SCHALL, and CUNNINGHAM, *Circuit Judges*.

REYNA, *Circuit Judge*.

Appellant Sara Corcoran seeks survivor annuity benefits under the Federal Employees Retirement System. To receive benefits, Ms. Corcoran must establish that she and her late husband, Anthony Schinella, were married for at least nine months prior to his passing. Because we find no error in the Merit Systems Protection Board's determination that Mr. Schinella and Ms. Corcoran were married less than nine months before Mr. Schinella's passing, we affirm the denial of Ms. Corcoran's claim for survivor annuity benefits.

BACKGROUND

I.

Mr. Schinella worked for the federal government from 1991 until his death in 2020. During that time he contributed to the Federal Employees Retirement System ("FERS").

Mr. Schinella and Ms. Corcoran (collectively, the "couple") began dating in the summer of 2018. Around December 2018, Mr. Schinella gave Ms. Corcoran a diamond necklace and earrings. On December 15, 2018, Ms. Corcoran referred to Mr. Schinella as her husband in a social media post. Mr. Schinella gave Ms. Corcoran an engagement ring in February 2019. The couple cohabitated from approximately January 2019 until Mr. Schinella's death, spending time at both Mr. Schinella's house in Virginia and Ms. Corcoran's residence in Washington, D.C.

The couple held a civil marriage ceremony in Virginia on May 29, 2020. Mr. Schinella passed away on June 14, 2020.

II.

Ms. Corcoran filed a claim with the Office of Personnel Management ("OPM") to receive survivor annuity benefits under FERS. In the claim, Ms. Corcoran referenced her

May 29, 2020 marriage to Mr. Schinella and attached the couple's marriage certificate.

A threshold issue is whether Ms. Corcoran qualifies as a "widow" under 5 U.S.C. § 8441(1). Section 8441(1)(A) defines a widow as the "surviving wife of an employee . . . who . . . was married to him for at least 9 months immediately before his death." OPM denied Ms. Corcoran's claim, finding she and Mr. Schinella had not been married at least nine months before Mr. Schinella's death. Ms. Corcoran requested reconsideration. On review, OPM determined that based on the couple's May 29, 2020 civil ceremony, the couple had not been married for nine months prior to Mr. Schinella's June 14, 2020 passing. OPM also considered and rejected Ms. Corcoran's attempt to establish a common law marriage in Virginia prior to the civil ceremony. OPM pointed out that the Commonwealth of Viriginia does not recognize common law marriages "unless you lived together in a State that recognizes common-law marriage and then moved to Virginia." J.A. 157. OPM affirmed its denial of benefits.

Ms. Corcoran appealed to the Merit Systems Protection Board ("Board"), this time asserting a common law marriage in the District of Columbia. An administrative judge ("AJ") affirmed OPM's denial, finding that Ms. Corcoran failed to present preponderant evidence that she and Mr. Schinella established a common law marriage in the District of Columbia. The AJ found that the documents of record—in particular, Ms. Corcoran's initial application for death benefits, which made no mention of a marriage in the District of Columbia, and Ms. Corcoran's 2019 tax returns, which she filed as "single"—did not support Ms. Corcoran's claim. The AJ further found that testimony from Ms. Corcoran failed to establish that she and Mr. Schinella cohabitated as husband and wife prior to May 29, 2020. Specifically, the AJ noted that Ms. Corcoran was unable to identify a particular conversation or point in time at which she and Mr. Schinella expressly agreed that they were

presently husband and wife. Although the AJ found credible that the couple at times referred to each other as "husband" and "wife," she concluded that they spoke the words as terms of endearment rather than indicating that they had mutually agreed to be presently married. The AJ found that testimony from Ms. Corcoran's mother and Ms. Corcoran's close friend supported the conclusion that the couple were engaged to be married and referred to each other as "husband" and "wife" as terms of endearment both prior to and during their engagement. Finally, the AJ found that the couple's diligent pursuit of a civil marriage ceremony despite Ms. Corcoran's health-related obstacles and the COVID-19 pandemic supported the finding that the couple had not created a common law marriage in the District of Columbia prior to their civil marriage in May 2020.

Ms. Corcoran petitioned for review of the AJ's decision. The Board determined that the AJ correctly concluded that Ms. Corcoran failed to establish that she and Mr. Schinella created a common law marriage at least nine months before Mr. Schinella's death. The Board largely adopted the AJ's analysis, identifying the evidence that the AJ found persuasive and noting its own deference to the AJ's credibility determinations. The Board agreed with the AJ's finding that Ms. Corcoran proffered insufficient evidence to establish that she and Mr. Schinella formed a common law marriage in the District of Columbia prior to their civil marriage ceremony, and consequently, that Ms. Corcoran failed to establish entitlement to FERS survivor benefits.

Ms. Corcoran petitions this court for review. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

DISCUSSION

I.

Ms. Corcoran argues the Board erred in determining that she and Mr. Schinella had not entered into a common

law marriage at least nine months prior to Mr. Schinella's passing. In addition to a general contention that the Board's finding was not supported by substantial evidence, *see* Appellant Br. 18, Ms. Corcoran challenges three aspects of the AJ's factfinding, *id*. at 25–40.

We will affirm the Board's decision unless we find it to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938).

The District of Columbia is one of only a handful of jurisdictions that continue to allow the formation of common law marriages. *Cleary v. Cleary*, 318 A.3d 536, 540 (D.C. 2024). The elements of common law marriage in the District of Columbia are "cohabitation as husband and wife, following an express mutual agreement, which must be in words of the present tense." *Coates v. Watts*, 622 A.2d 25, 27 (D.C. 1993). Thus, to establish her common law marriage to Mr. Schinella in the District of Columbia, Ms. Corcoran was required to show by a preponderance of the evidence that she and Mr. Schinella expressly agreed that they were presently husband and wife. *See Coleman v. United States*, 948 A.2d 534, 544 (D.C. 2008). "Although there is no set formula required for the [express mutual] agreement, the exchange of words must inescapably and unambiguously imply that an agreement was being entered into to become man and wife as of the time of the mutual consent." *Coates*, 622 A.2d at 27 (citation modified).

## II.

We first address Ms. Corcoran's general contention that the Board's conclusion was not supported by substantial evidence. Because the Board largely adopted the AJ's

analysis, we consider whether the AJ identified substantial evidence to support the Board's conclusion.

The AJ cited documents of record in support of her finding. J.A. 24–25. She noted that Ms. Corcoran listed Mr. Schinella's Virginia address as her address on their joint 2020 tax returns, which she filed in 2021. J.A. 24. In contrast, Ms. Corcoran filed her 2019 return as single, separately from Mr. Schinella, and under her District of Columbia address. J.A. 24–25. The Board subsequently relied on this evidence to distinguish the instant case from *Jackson v. Bowen*, 690 F. Supp. 58 (D.D.C. 1988), a case cited by Ms. Corcoran. J.A. 12. The Board noted that in *Jackson*, the appellant and the decedent filed two tax returns under "married filing joint returns" status prior to the decedent's death. *Id.* (citing 690 F. Supp. at 60–64). The *Jackson* court characterized these joint returns as "most noteworthy." 690 F. Supp. at 62. Here, the AJ found Ms. Corcoran's 2019 tax return to indicate that Ms. Corcoran did not consider herself and Mr. Schinella to be legally married in the District of Columbia at that time. J.A. 24–25.

The AJ cited Ms. Corcoran's testimony as additional evidence supporting her finding of no common law marriage. The AJ noted that Ms. Corcoran "was unable to identify a particular conversation or point in time" at which she and Mr. Schinella expressly agreed that they were presently husband and wife. J.A. 25. The AJ analyzed Ms. Corcoran's testimony as follows:

> The appellant testified that the couple became engaged in or around December 2018 or January 2019 when Schinella gave her a diamond necklace from Bahrain. Her testimony was inconsistent as to the meaning of that gift and the engagement ring Schinella later gave her in February 2019. First, she testified that Schinella "asked me to marry him" when he gave her the necklace. She

> later testified that the two considered themselves already married after he gave her the necklace. She alleged the engagement ring and later wedding "was just part of this continuum where we agreed to be each other's partner for eternity" and that "it was clear we had made a lifelong commitment to each other."

J.A. 25–26 (citations omitted). Like the Board, we find no fault with the AJ's analysis. *See* J.A. 9. Ms. Corcoran's inability to identify when the couple reached an express mutual agreement in words of the present tense to be husband and wife supports the conclusion that Ms. Corcoran and Mr. Schinella did not form a common law marriage in the District of Columbia. *See Coates*, 622 A.2d at 27.

That conclusion is further supported by testimony from Ms. Corcoran's close friend, Morgan Allen, and Ms. Corcoran's mother, Carol Anderson. Ms. Allen testified to Mr. Schinella's plans to propose to Ms. Corcoran, the couple's engagement celebration with Ms. Allen, and Ms. Corcoran's excitement about the engagement and being Mr. Schinella's fiancée. J.A. 27; J.A. 91–93. Ms. Anderson testified that Mr. Schinella asked her for her daughter's hand in marriage in or around January 2019, and that Mr. Schinella was her daughter's fiancé in early 2019. J.A. 27; J.A. 102–03. We agree with the Board that the testimony supports the AJ's finding that, prior to their May 2020 civil marriage ceremony, Ms. Corcoran and Mr. Schinella possessed only a future intention to be married at some later date. *See* J.A. 9–10.

Because the Board's decision is supported by evidence identified by the AJ, including documentary evidence and testimony from multiple witnesses, we hold that substantial evidence supports the Board's determination that Ms. Corcoran and Mr. Schinella did not create a common law marriage at least nine months prior to Mr. Schinella's death.

### III.

Ms. Corcoran raises three specific challenges to the AJ's fact finding. First, Ms. Corcoran challenges the AJ's finding that the couple used the words "husband" and "wife" merely as terms of endearment. Appellant Br. 25–34. She contends that the finding rests entirely on the AJ's disbelief of Ms. Corcoran's testimony. *Id.* But the AJ's analysis boils down to a weighing of the evidence. The AJ gave less weight to Ms. Corcoran's testimony regarding the couple's use of those words than to evidence indicating that the couple were not presently husband and wife. *See* J.A. 25–27. As noted above, the AJ found persuasive Ms. Corcoran's inability to identify a particular time or conversation in which she and Mr. Schinella expressly agreed that they were presently husband and wife, as well as testimony from Ms. Allen and Ms. Anderson regarding the couple's engagement and plans to marry. *Id.* Ms. Corcoran's argument is an invitation to reweigh the evidence, which we cannot do. *Jones v. Dep't of Health & Hum. Servs.*, 834 F.3d 1361, 1369 (Fed. Cir. 2016) ("We do not disturb the weight that the AJ afforded to the competing record evidence.").

Second, Ms. Corcoran argues that the AJ erred by justifying her finding of no common law marriage on snippets of testimony taken out of context. Appellant Br. 34–39. Ms. Corcoran contends that the AJ ignored the entirety of the testimony, instead choosing portions favoring a conventional notion of what it means to be "engaged." *Id.* at 35. Like her first argument, Ms. Corcoran's second argument invites us to stand in the place of the AJ, which we cannot do. The AJ detailed the evidence upon which she relied, and she explained why she found some portions of testimony more credible than others. *See* J.A. 26–28. "The determination of the credibility of the witnesses is within the discretion of the presiding official who heard their testimony and saw their demeanor." *Griessenauer v. Dep't of Energy*, 754 F.2d 361, 364 (Fed. Cir. 1985). Like the Board,

we find no reason to challenge the AJ's "specific and explained credibility findings." J.A. 10.

Third, Ms. Corcoran argues that the AJ erred by giving undue weight to the couple's civil marriage ceremony. Appellant Br. 39–40. Ms. Corcoran again asks us to reweigh evidence. The AJ heard testimony from Ms. Corcoran, Ms. Allen, Ms. Anderson, and the couple's car mechanic, and found that the weight of the evidence supported the conclusion that the couple had not formed a common law marriage in the District of Columbia prior to their civil marriage ceremony in Virginia. J.A. 26–28. "It is not for this court to reweigh evidence on appeal." *Rickel v. Dep't of the Navy*, 31 F.4th 1358, 1366 (Fed. Cir. 2022).

## CONCLUSION

We have considered Ms. Corcoran's remaining arguments and find them unpersuasive. For the reasons stated above, we affirm the Board's decision affirming OPM's denial of Ms. Corcoran's claim for survivor annuity benefits.

## AFFIRMED

### COSTS

No costs.